FILED
United States Court of Appeals
Tenth Circuit

December 19, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RUSSELL EUGENE FREEMAN,

      Plaintiff - Appellant,

v.

JOHN CARROLL, Case Manager III;
CHARLES TAPPE, Hearing Chair Off.;
BRIAN BRADEN, Life Safety Coord.;
BETTY RIGGIN, Lieutenant,

      Defendants - Appellees.

No. 12-1057
(D.C. No. 1:06-CV-00405-MSK-KMT)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **HOLMES** and **MATHESON**, Circuit Judges.

Russell Freeman has been a prisoner at the Fremont Correctional Facility ("FCF")

and the Colorado State Penitentiary ("CSP"), both part of the Colorado Department of

Corrections ("CODC") system. On July 6, 2004, Mr. Freeman was the subject of a

disciplinary hearing at CSP for events that took place at FCF. He was found guilty of

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

assault on a guard and sanctioned with the loss of 45 days of good time credits, 90 days of lost privileges, and $1,626.20 in restitution.[1]

After pursuing his state court remedies, Mr. Freeman filed a 42 U.S.C. § 1983 action in the United States District Court for the District of Colorado against the hearing board members—Lts. Charles Tappe, Brian Braden, and Betty Riggin—and John Carroll, the staff member assigned as a staff substitute for an inmate representative at the disciplinary hearing (collectively "Defendants"). In several orders, the district court granted summary judgment in favor of the Defendants.

On appeal, Mr. Freeman argues that the district court erred in (1) concluding that he was not denied due process at his disciplinary hearing, and (2) refusing to grant his motion to reopen discovery. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.     BACKGROUND

### A. *Factual Background*

#### 1. *June 26, 2004 Incident*

Mr. Freeman has served over 30 years of a 40-year-to-life sentence. On June 26, 2004, an incident occurred between Mr. Freeman and Officer Maria Bork at FCF. Officer Bork's report, according to the notice of charges, stated:

---

[1] He was also found guilty of and sanctioned for tampering with a lock or a security device. On December 18, 2008, the Colorado Court of Appeals affirmed the assault conviction but overturned the tampering conviction. *See Freeman v. Watkins*, No. 08CA0423 (Colo. App. Dec. 18, 2008). The tampering conviction is not at issue on appeal.

On Saturday, June 26, 2004, at approximately 1:25 p.m., Officer Maria Bork observed an inmate leaving the cell assigned to [Mr. Freeman and another inmate]. The inmate exiting the cell had something under his shirt. Officer Bork approached the cell and saw that there were (3) inmates still in the cell, including [Mr. Freeman] and (2) visiting inmates. Officer Bork asked the visitors to leave the cell and they complied. [Officer] Bork then entered the cell and asked [Mr. Freeman] what was in the box. [Mr. Freeman] became agitated[,] stating "You guys just want to take all my fucking things." [Officer] Bork then tried to calm [Mr. Freeman] down and asked him to come to the operations office to discuss the contents of the box. [Mr. Freeman] then came toward [Officer] Bork with the box and forcibly shoved the box at her, striking her in the chest. [Mr. Freeman] then took an aggressive posture, yelling and clenching his fists at her. [Officer] Bork then attempted to disengage by exiting the cell and ordering [Mr. Freeman] to stay in the cell. As [Officer] Bork closed the cell door with her key set, [Mr. Freeman] blocked the door from closing with his body and exited the cell. [Officer] Bork raised up her right hand at [Mr. Freeman's] stomach-level to stop his attack. [Mr. Freeman] then pushed her with his body into the 2nd tier railing fronting the cell, causing Officer Bork's back to strike the railing with considerable force. [Mr. Freeman] then left the area. [Officer Bork] followed and observed [Mr. Freeman] next to the [Cell House 8] entry talking to Sgts. Bell and McMorran. She immediately reported what had transpired earlier and that [Mr. Freeman] needed to cuff up. [Mr. Freeman] then lunged toward [Officer] Bork in an aggressive manner and Sgt. McMorran stepped between [Mr. Freeman] and [Officer] Bork. [Mr. Freeman's] left hand was cuffed by [Officer] Bork when he pulled away from her, causing injury to her right hand. Security staff responded and finally restrained [Mr. Freeman's] right hand. [Mr. Freeman] was then escorted out of the area by security staff and placed on RFP status.

ROA at 370.

Mr. Freeman's account of the incident is different. In a declaration prepared for

the district court, he stated:  Officer Bork confronted him about a box of art supplies that another inmate had left in his cell.  Officer Bork told him to give her the box.  He handed it to her, and she then put her hand up to his chest to stop him from leaving his cell and used her security key to close his cell door.  He lived in a cell block where he was free to come and go, except at night, so he waited five seconds for the locking mechanism to reset and then pushed a button to open the cell door.  As he left his cell, he walked around Officer Bork, who was standing to the side of the doorway, and went downstairs.  He said, "At no point did I make any contact with Officer Bork."  *Id.* at 373.

Mr. Freeman also declared:  He was speaking with two other officers when Officer Bork left the Cell House office and ordered him to let her handcuff him.  As she put the handcuff on his left wrist, it became so tight that he "accidentally pulled [his] hand away from the position it was in."  *Id*. at 373.  Officer Bork had already called for security, so he told her that he would wait for security to finish cuffing him.  Security officers took him to the security office and then to solitary confinement.  Mr. Freeman was in solitary confinement for only 10 minutes before he was taken to another office, strip-searched, and then transported to CSP.  For the next 18 days, he "had no access to the phones, letter-writing materials, or any other means of communication."  *Id*. at 376.

### 2.  *Notice of Charges*

On July 2, 2004, Mr. Freeman was served with a Colorado Department of Corrections ("CDOC") Notice of Charges, which charged him with assault and recited Officer Bork's summary of the event.  No witnesses were identified in the space

4

provided. Officer Bork and Lt. Darryl Directo, the disciplinary officer assigned to investigate the case, signed the notice to "certify that [the] charges and summary are true and correct." *Id.* at 370.

The notice advised Mr. Freeman, "If you desire witnesses, in accordance with the Code of Penal Discipline, please notify the Reviewing Supervisor as soon as possible, but no later than 24 hours prior to scheduled hearing, to avoid a continuance." *Id.* Mr. Freeman checked the box indicating that he wanted an inmate representative. In the space following "Name of representative," someone typed, "If representation is desired, report to hearing 10 minutes early." *Id.*

### 3. *July 6, 2004 Hearing*

In his declaration for the district court, Mr. Freeman stated that he was escorted to the hearing less than five minutes before it started and was introduced to John Carroll, a CDOC case manager, who would serve as his inmate representative. Mr. Freeman also stated that he told Mr. Carroll he wanted to call certain witnesses. Mr. Carroll responded, according to Mr. Freeman, that he was there to help protect Mr. Freeman's rights, not to advocate on his behalf.

The hearing board consisted of Lts. Charles Tappe, Brian Braden, and Betty Riggin.[2] The board advised Mr. Freeman of his right to request representation, witnesses, and continuances, as well as his right to remain silent. The board asked if he understood

---

[2] At the time of the hearing, Lt. Betty Fulton.

5

"the charges against [him], as they are defined by the Code of Penal Discipline and the possible sanctions if [he was] found guilty," and he responded that he did. *Id.* at 386-87. The chair then read the charges and asked whether Mr. Freeman understood them. Mr. Freeman responded that he did. The chair also stated that the sanctions for assault are up to 90 days of lost privileges, 30 days of punitive segregation, and 45 days of lost good time.

After the chair noted that Mr. Freeman had requested an inmate representative but not witnesses when he was served the notice, Mr. Freeman responded that he had requested witnesses. The chair told Mr. Freeman that he could request witnesses while giving his testimony. The chair asked whether Mr. Freeman understood, but the transcript states there was no audible response. When the chair asked Mr. Freeman how he pled, he responded not guilty. The chair then swore in Lt. Directo and directed him to present the department's case.

Lt. Directo related the incident and charges as they were stated in the Notice of Charges. He also testified that Officer Bork sought medical treatment. The chair directed that a letter from a CDOC risk management case manager, stating the costs to date for Officer Bork's medical treatment, be shown to Mr. Freeman.

After Lt. Directo finished, the chair told Mr. Freeman that he could make a statement regarding his plea, "ask for witnesses to present evidence[,] or give testimony if you wish." *Id.* at 392-93. Mr. Freeman responded that he would "like to talk to some witnesses first." *Id.* at 393. There was a long pause. Then, apparently referring to the

letter stating the costs for Officer Bork's treatment that had been handed to him, Mr. Freeman said, "This here doesn't say what injuries were caused. She could have got in a car accident or something." *Id*. The chair responded, "Go ahead and present your case then, Mr. Freeman." *Id*.

Mr. Freeman related his version of the incident and tried to point out problems with the case against him. He stated that he "never initiated any forceful or passive contact or any physical contact with" Officer Bork. *Id*. He asked why, if Officer Bork saw another inmate leave his cell with something hidden under his shirt, she had not stopped that inmate to investigate. He stated that, given their size difference, Officer Bork would have been in the hospital if he had pushed her. He also told the board that, if he had done all Officer Bork said, he would not have turned around and let her cuff him up when she told him to.

The chair interrupted Mr. Freeman when he began talking about the difficulty officers later had in removing the handcuffs. The chair told him that he had gone beyond the incident in question and that the tightness of the cuffs had no bearing on the case. Mr. Freeman stated that he was trying to explain why he turned around while being cuffed and that Officer Bork could not be believed. The chair then repeatedly told Mr. Freeman that he had described the pain that he felt from the tightness of the cuffs and to move on, finally telling him that if he continued the board would cut him off completely. The chair directed Mr. Carroll to explain to him that he needed to move on.

Mr. Freeman next attempted to discredit Lt. Directo's investigation by asking him

7

if he had spoken to any of the inmates who witnessed the incident. Lt. Directo responded that he had not. Mr. Freeman again asked him, and Lt. Directo stated, "I asked the staff that were involved. I completed my investigation. That's why you are getting charged with this." *Id*. at 400. Mr. Freeman then asked if he spoke with Lance Spurlock, a CDOC staff member, and Lt. Directo admitted that he had not.[3]

Asked if he had anything else to present, Mr. Freeman requested polygraph tests for himself and Officer Bork. He asked why, if he had pushed Officer Bork so hard, the paints had not spilled out of the box she was holding and why she had not pushed the panic button like she was supposed to do.

The chair again asked if Mr. Freeman had anything else to present, and Mr. Freeman responded that he did not.

After conferencing with one another, the board found Mr. Freeman guilty of assault for pushing Officer Bork into a railing, pushing the box into her chest, and pulling away from her while she was trying to handcuff him. It explained that its decision was "based on the report by [Officer] Bork, presentation by Lieutenant Directo and by your own statements." *Id*. at 404. It then imposed $1,626.20 in restitution for the injuries sustained by Officer Bork, a 90-day loss of privileges, and a 45-day loss of good time.

The board later issued a written Disposition of Charges in which it found Mr. Freeman guilty of assault for the same conduct as in the oral disposition. The written

_____

[3] In his opening brief, Mr. Freeman explains that he anticipated that Officer Spurlock would testify to having heard Officer Bork plotting to get Freeman.

disposition listed as supporting evidence Officer Bork's written statement, Lt. Directo's presentation, and Mr. Freeman's testimony. As the reasons for the penalties, it stated, "The seriousness of the assault; the assault was on staff and staff was injured." *Id*. at 410.

Mr. Freeman appealed to the Colorado state district court, which affirmed the conviction and sentence. On December 18, 2008, the Colorado Court of Appeals affirmed the assault conviction.

## B. *Procedural History*

On March 8, 2006, Mr. Freeman filed a complaint based on 42 U.S.C. § 1983 in the United States District Court for the District of Colorado, alleging constitutional violations related to this and other hearings at FCF and CSP. On August 28, 2006, the district court dismissed the complaint for failure to plead exhaustion of administrative remedies. Due to an intervening change in law, the Tenth Circuit vacated the judgment and remanded the case for further proceedings.

### 1. *District Court's May 4, 2010 Order*

On May 4, 2010, the district court made three rulings in response to a motion for summary judgment by the Defendants.

First, the court noted that Mr. Freeman had "not specified whether he is asserting his claims against the Defendants in their individual or official capacities." *Id.* at 204. It liberally construed the pleadings, "assum[ing] that Mr. Freeman intended to assert both types of claims." *Id.* The court concluded, however, that "no official capacity claims are cognizable" because "Mr. Freeman's claims are based on discrete acts and because he

9

seeks no specific prospective remedy." *Id*. The court therefore considered all the claims as brought against the Defendants in their individual capacities. The court also dismissed all individual capacity claims in which Mr. Freeman had not shown personal participation by a defendant.

Second, the district court denied the motion seeking summary judgment for Mr. Carroll on the claim that Mr. Carroll had deprived Mr. Freeman of his right to call witnesses while acting as his inmate representative. The court also concluded that Mr. Carroll was not entitled to qualified immunity. The court later reversed course and dismissed Mr. Carroll.

Third, the court concluded there was insufficient evidence to support a prima facie claim against Lts. Tappe, Braden, and Riggin. "[B]ecause Mr. Carroll allegedly did not advise the hearing officers of Mr. Freeman's desire to call witnesses, the hearing officers cannot reasonably he held liable for failing to afford [him] a procedural protection they were not aware he had requested." *Id.* at 213.

Following these rulings, the only remaining defendant was Mr. Carroll, to be rejoined later by Lts. Tappe, Braden, and Riggin.

### 2. *Reinstatement of Claims Against Hearing Board Members*

On January 5, 2011, Mr. Freeman filed a Rule 60(b)(1) motion for relief from judgment. He argued that the district court had erred in finding that he had failed to allege that the hearing board members were personally involved in the deprivation of Mr. Freeman's rights. Given this mistake of fact, he requested that the court reinstate Lts.

10

Tappen, Braden, and Riggin as parties.

On March 4, 2011, the district court concluded it had mistakenly determined that there were no allegations of Lts. Tappe, Braden, and Riggin's personal participation in the deprivation of his rights. Accordingly, the district court granted Mr. Freeman's motion, reinstating the claim against them for the denial of due process at the July 6 disciplinary hearing.

### 3. *District Court's January 18, 2012 Order*

On May 17, 2011, Mr. Freeman moved for summary judgment. On May 20, 2011, the defendants filed an amended motion to dismiss. On November 18, 2011, the district court denied Mr. Freeman's motion for summary judgment. The court also stated that the evidence appeared to be insufficient for Mr. Freeman to establish his prima facie case and that there appeared to be no genuine issues of material fact to be resolved at trial. It therefore ordered him to present additional evidence demonstrating a prima facie case or otherwise to show cause why the court should not enter summary judgment. Mr. Freeman responded to the order with exhibits, and he requested additional time to conduct discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

On January 18, 2012, the district court denied Mr. Freeman's request for further discovery: (1) it doubted that he was a non-movant who could make a Rule 56(d) motion, as he had brought the motion for summary judgment; and (2) Mr. Freeman sought to discover evidence outside the context of the July 6, 2004 hearing, and there was no showing that such discovery was related to his due process rights during the hearing.

As will be discussed in further detail below, the district court also concluded that Mr. Freeman had not presented sufficient evidence to establish a prima facie case for his due process claims and therefore granted summary judgment in favor of the hearing board defendants and Mr. Carroll.

## II.    DISCUSSION

Mr. Freeman appeals regarding two issues.  First, he argues that the district court erred in granting summary judgment on his due process claim arising from the July 6, 2004 hearing.  Second, he argues that the district court erred in denying his motion to reopen discovery after the court filed an order to show cause.

### A.  *Official Capacity and Individual Capacity Claims*

Before reaching the due process and discovery issues, we first address whether any official capacity claims are at issue on appeal.  In its May 2010 order, the district court concluded "that no official capacity claims are cognizable" in this case "because Mr. Freeman's claims are based on discrete acts and because he seeks no specific prospective remedy."  *Id.* at 204.  The district court therefore considered all claims to be against the Defendants in their individual capacities.  We can find nothing in the district court's subsequent orders indicating that it reinstated the official capacity claims.

In his notice of appeal from the January 2012 summary judgment order and final judgment, Mr. Freeman stated that he is "appeal[ing] from any and all orders antecedent and ancillary thereto."  *Id.* at 692.  In the conclusion of his opening brief, he requests that we reverse the district court's grant of summary judgment against CDOC Executive

12

Director Tom Clements in his official capacity and against the Defendants in their individual and official capacities. In his reply brief, Mr. Freeman again states that he is making a claim against Mr. Clements in his official capacity and against the Defendants in their official and individual capacities. At oral argument, he asserted that he was making official capacity claims for injunctive relief—reversal of the restitution order and the return of the funds taken from his prison account—and individual capacity claims for monetary damages from the Defendants.

A party waives an issue when he or she fails to raise it in an opening brief. *Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005); *see also Adams-Arapahoe Joint Sch. Dist. No. 28-J v. Cont'l Ins. Co.*, 891 F.2d 772, 776 (10th Cir. 1989) ("An issue not included in either the docketing statement or the statement of issues in the party's initial brief is waived on appeal. . . . Merely mentioning inherent defects in another context is not enough."). A party also waives an issue by raising it insufficiently in an opening brief. *San Juan Citizens Alliance v. Stiles*, 654 F.3d 1038, 1056 (10th Cir. 2011). "Arguments raised in a perfunctory manner . . . are waived." *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002).

Mr. Freeman has not sufficiently raised the issue of whether there are any official capacity claims, much less argued it. He asserts that he is making official capacity claims. But he fails to argue in his briefs that the district court erred in dismissing the official capacity claims for failure to state a prospective remedy. Mr. Freeman has thereby waived the argument on appeal that the district court erred in dismissing the

13

official capacity claims. We therefore review Mr. Freeman's remaining claims against the Defendants in their individual capacities only.

## B. *Legal Background on Due Process in Prison Disciplinary Hearings*

Although a prisoner's "rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). "[Prisoners] may not be deprived of life, liberty, or property without due process of law," but their due process rights are "subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Id*. at 556. "[T]he full panoply of rights due a defendant in [criminal] proceedings does not apply." *Id*. at 556; *see also Grossman v. Bruce*, 447 F.3d 801, 804-05 (10th Cir. 2006) (prisoners are entitled to some due process in prison disciplinary proceedings, but not the full panoply of rights of a criminal prosecution).

Due process requires that an inmate

> receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). In addition, "the minimum requirements of procedural due process" demand that "the findings of the prison disciplinary board are supported by

14

some evidence in the record." *Id.*; *see also Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 812 (10th Cir. 2007).

The Supreme Court said in *Wolff* that it was "not prepared to hold that inmates have a right to either retained or appointed counsel in disciplinary proceedings." 418 U.S. at 570. Nevertheless, "[w]here an illiterate inmate is involved," or where "the complexity of the issue makes it unlikely that [an] inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate." *Id.* If a prisoner is not allowed to seek the aid of a fellow inmate, he should be given "adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." *Id.*

## C. *Summary Judgment on Due Process*

Mr. Freeman argues that his due process rights were violated due to (1) inadequate notice of the restitution penalty; (2) insufficient evidence; (3) an inadequate written statement explaining the board's decision; (4) his not being allowed to present witnesses; and (5) inadequate assistance of counsel.

We review de novo a district court's decision to grant summary judgment, applying the same standards the district court should apply. *E.E.O.C. v. C.R. England*, 644 F.3d 1028, 1037 (10th Cir. 2011). A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]e construe all facts and reasonable inferences in a light most favorable to the nonmoving party." *Champagne*

15

*Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1078 (10th Cir. 2006) (quotations omitted).

### 1. *Notice of the Restitution Penalty*

Mr. Freeman asserts that his advance written notice of the disciplinary charges was constitutionally deficient because it did not inform him of the possible sanctions for those charges. The district court rejected this claim. It explained that, under *Wolff*, the purpose of notice "is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are." *See Wolff*, 418 U.S. at 564. Written notice must be given at least 24 hours before the hearing "to inform [the defendant] of the charges and to enable him to marshal the facts and prepare a defense." *Id.* The district court noted that advance notice of possible sanctions is not one of the explicit requirements of *Wolff*.

Neither *Wolff* nor *Hill* states that due process requires notice of potential sanctions in addition to notice of the disciplinary charges. On appeal, Mr. Freeman cites to *McMillan v. Healey*, 739 F. Supp. 153 (S.D.N.Y. 1990), which held that, although inmates do not have to be informed of potential penalties prior to misconduct, "failure to notify an inmate, after he has been charged with misconduct, of the potential penalties that could be imposed for that misconduct," violates due process. *Id.* at 157.

Few courts have followed *McMillan* in requiring such notice. For example, a federal court in Indiana granted defendants qualified immunity, noting that *McMillan* was the only case holding that there is a due process right to notice of potential penalties. *See*

16

*Higgason v. Swihart*, CIV. 3:93-CV-805AS, 1995 WL 358769, at *8-9 (N.D. Ind. May 11, 1995); *see also Jolley v. Wezner*, CV 970407988S, 1999 WL 509810, at *5 (Conn. Super. Ct. July 6, 1999) ("The ruling in *McMillan v. Healey*, has not been widely used and goes beyond the minimum requirements set forth in *Wolff v. McDonnell*.").

No federal circuit court has recognized a right to notice of penalties in prison disciplinary hearings. In an unpublished decision, we held that "notice of potential penalties is not one of the requirements of due process." *White v. Golder*, 245 F. App'x. 763, 764 (10th Cir. 2007) (unpublished) (cited only for persuasive value, Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A)). In the absence of clearly established authority that Mr. Freeman was entitled to notice of potential sanctions, the board defendants are protected by qualified immunity from § 1983 liability. *See Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001).[4]

### 2. *Sufficiency of the Evidence*

Mr. Freeman continues to challenge the sufficiency of the evidence to support the disciplinary board's determination. We review "the findings of [a] prison disciplinary board" for "some evidence." *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 812 (10th Cir. 2007) (quoting *Hill*, 472 U.S. at 454). Review under this standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id*. (quotations omitted). Rather, the court evaluates

---

[4] We note that the district court pointed to the Colorado Code of Penal Discipline, which provides for restitution as a possible sanction.

"whether there is any evidence that could support the conclusion reached by the disciplinary board." *Id.* (quotations omitted). "A disciplinary board's decision can be upheld . . . even if the evidence supporting the decision is meager." *Id.* (quotations omitted). Here, the district court concluded that the evidence in Mr. Freeman's hearing met the "some evidence" requirement. *See Hill*, 472 U.S. at 455 (stating that requirements of due process are "met if there was some evidence from which the conclusion of the administrative tribunal could be deduced" (quotations omitted)).

On appeal, Mr. Freeman argues that "[m]ere accusations unsupported by any additional evidence do not constitute 'some evidence.'" Aplt. Br. at 19 (quoting *Moore v. Plaster*, 266 F.3d 928, 931-32 (8th Cir. 2001) (conduct violation report containing accusations but not based on prison officer's personal knowledge and not listing any witnesses is not evidence). He asserts that other circuits—including the Second Circuit in *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004)—have found disciplinary convictions invalid when the evidence is unreliable. He also cites *Taylor v. Wallace*, 931 F.2d 698 (10th Cir. 1991), for the proposition that "indicia of reliability" are particularly important in disciplinary hearings given the limited due process rights required. *Id.* at 702. In *Taylor*, we held "that the testimony of confidential informants cannot be given any weight absent a determination made by the prison staff that indicated that the informant was reliable." *Id.* at 701.

Mr. Freeman's reliance on cases like *Luna* and *Taylor* is misplaced. His case lacks the levels of hearsay involved in *Luna*, where the inmate victim refused to testify.

18

356 F.3d at 484. In *Luna*, the disciplinary determination was based on a misbehavior report prepared by a prison officer using information provided by another prison officer who had spoken with the victim. *Id*. at 489. The officer preparing the report never spoke with the inmate victim and had no idea if the victim was telling the truth, and the officer who had spoken with the inmate victim was not called as a witness. *Id*. *Taylor* and other cases Mr. Freeman cites for support involve accusations by a confidential informant,[5] and that is plainly not the case here.

Rather than a report prepared by a prison guard providing the hearsay of either an inmate victim who refused to testify or a confidential informant, the Notice of Charges here contains the statement of a known prison guard who was the victim and who signed the statement of the incident, certifying it as "true and correct." ROA at 370. And before presenting Officer Bork's statement at the hearing, Lt. Directo interviewed other staff members rather than merely relying on her statement. Lt. Directo also presented a memo to the board listing the costs of Officer Bork's treatment as evidence of her injuries.

We are satisfied that "the findings of the prison disciplinary board are supported

---

[5] Mr. Freeman also cites the following: *Sira v. Morton*, 380 F.3d 57, 78 (2d Cir. 2004) (hearing officer must independently assess the credibility of confidential informants, considering totality of circumstances); *Kyle v. Hanberry*, 677 F.2d 1386, 1390 (11th Cir. 1982) (hearing committee violated due process in not establishing informant credibility, where determination based on hearsay information derived from a confidential informant). Mr. Freeman also cites *Biggs v. Terhune*, 334 F.3d 910, 915 (9th Cir. 2003) ("[T]he evidence underlying the board's decision must have some indicia of reliability." (quotations omitted)), *overruled by Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010), which is inapposite to this case because the record here provided a reliable basis for the board's decision.

by some evidence in the record." *Hill*, 472 U.S. at 454.

### 3. *Written Statement of Determination*

Mr. Freeman argues that the disciplinary board's written statement of its decision was insufficient. A "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action" is required to "protect the inmate against collateral consequences" and to ensure that the board acts fairly. *Wolff*, 418 U.S. at 565.

In *Taylor*, the board stated only that it "found [the prisoner] guilty in reliance upon confidential witness statements." 931 F.2d at 703. We considered this evidence sufficient because of "the explicit description of the conduct set out in the offense report and the obvious institutional concerns implicated." *Id*.

In *Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996), we rejected a prisoner's challenge to the sufficiency of the board's statement when it wrote that the prisoner "was found guilty based on an officer's report 'related to this officer.'" *Id.* at 1445. We explained that the prisoner knew "the conduct he was accused of committing and whose statement had incriminated him." *Id*. Moreover, "[t]he lack of more specific findings also did not hamper our ability to review the proceeding and [the board's] findings." *Id*.; *see also Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990) (A transcript of a disciplinary proceeding is an adequate substitute for a written statement of findings).

Here, the Disposition of Charges states that the supporting evidence consists of the written statement by Officer Bork, the presentation by Lt. Directo, and the testimony by Mr. Freeman. It also states the board's finding that Mr. Freeman used force against

20

Officer Bork by pushing her into a railing, pushing the box of paints into her chest, and pulling away from her as she was trying to cuff him. Finally, the disposition states that the reasons for its decision were the seriousness of the assault, that the assault was on staff, and that the staff member was injured.

The notice of charges provides an explicit description of Mr. Freeman's conduct. *See Taylor*, 931 F.2d at 703. Mr. Freeman knows the conduct he was charged with and whose statement incriminated him. *See Mitchell*, 80 F.3d at 1445. Nothing in terms of notice hampers his ability to contest the ruling or our ability to review the proceeding and the findings. The district court did not err in concluding that the board's written statement was adequate.

### 4. *Opportunity to Present Witnesses*

Mr. Freeman argues that the hearing board violated his right to call witnesses. The district court held: "Regardless of whether Mr. Freeman told Mr. Carroll the names of the witnesses he wanted or not, at the hearing Mr. Freeman knew that witnesses he desired were not present. He was advised that he could call witnesses or that he could request a continuance, but he did neither." ROA at 678. The court therefore concluded that the board had not denied Mr. Freeman his right to call witnesses.

Prisoners have only a qualified right to call witnesses in a disciplinary hearing. An inmate's interest must be balanced "against the needs of the prison, and some amount of flexibility and accommodation is required." *Wolff*, 418 U.S. at 566. Prison officials must have "discretion to keep the hearing within reasonable limits and to refuse to call

witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id*.; *see also Grossman*, 447 F.3d at 805 (inmates are entitled to call witnesses and present evidence as long as doing so "will not be unduly hazardous to institutional safety or correctional goals" (quotations omitted)). Because of the danger of reprisal and resentment, "the Constitution should not be read to" require the right to confront and cross-examine witnesses against a prisoner in a disciplinary hearing. *Wolff*, 418 U.S. at 568; *see also Taylor*, 931 F.2d at 701.

Mr. Freeman states that "[t]here is no question that the hearing board and Carroll knew that [he] desired to call witnesses to the hearing. There is no dispute that no witnesses were ever called." Aplt. Br. at 18. He argues that this "[b]lanket exclusion of [his] witnesses . . . is an 'obvious procedural defect' entitling [him] to relief." *Id*. at 17. He also argues that his due process rights were violated when he was "prevented from interviewing potential witnesses and identifying those who could testify in his defense." *Id*. at 18.

When Mr. Freeman's hearing began, the chair of the board told him that he "ha[d] the right to request representation, witnesses, and continuances." ROA at 385-86. When the chair noted that Mr. Freeman had not notified the prison of his desire to request witnesses, Mr. Freeman stated that he had done so. The chair responded that Mr. Freeman could "request them when [he was] giving [his] testimony." *Id*. at 388. The

22

chair asked Mr. Freeman if he had any other questions, and Mr. Freeman stated that he did not.

After Lt. Directo presented his case, the chair told Mr. Freeman that he could "make a statement regarding [his] plea" and that he could "ask for witnesses to present evidence or give testimony." *Id*. at 392-93. Mr. Freeman responded, "I'd like to talk to some witnesses first." *Id*. at 393. After a pause, and referring to the letter documenting the costs of Officer Bork's treatment that had been handed to him, Mr. Freeman said, "This here doesn't say what injuries were caused. She could have got in a car accident or something." *Id*. The chair then stated, "Okay. Go ahead and present your case then, Mr. Freeman." *Id*. During the course of Mr. Freeman's presentation, the chair repeatedly asked Mr. Freeman if he had anything else to present or any other questions for Lt. Directo. Mr. Freeman finally responded, "No, man." *Id*. at 402.

Rather than requesting a continuance to gather evidence, as he had been told was his right, Mr. Freeman proceeded to present his case. Although Mr. Freeman indicated that he wanted to request witnesses before Lt. Directo presented the prison's case and was told that he could do so when it was time to present his case, he failed to do so when that time came, even though the chair explicitly told him at that time that he could call witnesses. The chair asked him five times if he had anything else left to present, and at no point did Mr. Freeman name the witnesses that he had written down while speaking with Mr. Carroll before the hearing.

23

Prisoners have only a qualified right to call witnesses, and prison officials may evaluate a request for witnesses and refuse to provide them for various reasons. *See Wolff*, 418 U.S. at 566. Regarding the calling of witnesses, the Notice of Charges instructed Mr. Freeman to notify prison officials "as soon as possible, but no later than 24 hours prior to the scheduled hearing." ROA at 370. The record lacks evidence that he notified anyone of his desire to call witnesses at least 24 hours before the hearing. Mr. Freeman had an opportunity to request witnesses, and he failed to do so at the appointed time. The board might have asked him if he no longer desired to call witnesses, but it was not required to act as his advocate. Mr. Freeman never asked for a continuance to interview witnesses or obtain other evidence, although the board advised him of this right.

The district court therefore did not err in finding that Mr. Freeman's qualified right to call witnesses was not violated.

### 5. *Inmate Aid in Preparing and Presenting Case*

Mr. Freeman argues that he was entitled to assistance in preparing his defense because he was unable to do it himself, and he asserts that Mr. Carroll failed to provide such assistance.

The district court stated that, under *Wolff*, "[t]he appointment of an inmate representative . . . does not give an inmate greater procedural rights than he would otherwise have." *Id.* at 684. The court further stated that Mr. Freeman was "entitled to

the opportunity to present evidence; this he was provided." *Id*. at 685. The court therefore dismissed the claim against Mr. Carroll.

Prisoners have no right to the assistance of counsel in prison disciplinary hearings. *See Wolff*, 418 U.S. at 569-70. Nevertheless, a prisoner is entitled to "the aid of a fellow inmate" or an adequate substitute when he is "illiterate" or where the issues are so complex that he cannot "collect and present the evidence necessary for an adequate comprehension of the case." *Id*. at 570.

Neither of the situations applies to Mr. Freeman. *Id*. He argues, however, that he was entitled to assistance because he was locked in isolation and unable to collect evidence.

Mr. Freeman's appeal on this issue fails. Because, as discussed earlier, he has no official capacity claims, his inadequate assistance claim must be against a defendant in his individual capacity. The only defendant Mr. Freeman mentions with respect to his assistance claim is Mr. Carroll. But even if Mr. Carroll were a proper defendant for this claim, he would as a state actor have qualified immunity.

Mr. Carroll asserts that he is entitled to qualified immunity because it is not "sufficiently clear that a reasonable official would have understood that his conduct violated" a right to inmate assistance under these circumstances. Aplee. Br. at 15 (quoting *Currier*, 242 F.3d at 923). He contends there is no Supreme Court or Tenth Circuit decision on point and the weight of authority from the other circuits does not clearly establish the right.

25

We agree with Mr. Carroll that the law was not clearly established that Mr. Freeman was entitled to assistance. Neither this court nor the Supreme Court has addressed Mr. Freeman's inadequate assistance theory, and the two circuit courts that have addressed it are in conflict. *Compare Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988), *with Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992).

The district court correctly dismissed Mr. Freeman's claim against Mr. Carroll.

**D.** *Denial of Request to Reopen Discovery*

Mr. Freeman argues that the district court erred in granting summary judgment without giving him an adequate opportunity to conduct discovery. This court reviews for an abuse of discretion a district court's denial of a Rule 56(d) motion. *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006). To constitute an abuse of discretion, the court's decision must exceed "the bounds of the rationally available choices given the facts and the applicable law in the case at hand." *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (quotations omitted).

Under Rule 56(d), "the court may . . . defer considering [a summary judgment] motion or . . . allow time . . . to take discovery" if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The nonmovant must file an affidavit explaining why facts necessary to rebut the motion for summary judgment cannot be presented. *Valley Forge Ins.*, 616 F.3d at 1096. The affidavit must identify the unavailable facts, why the facts cannot be presented, the steps taken to obtain them, and how additional time will

26

help the party obtain the facts and rebut the motion for summary judgment. *Id*.

The district court denied Mr. Freeman's Rule 56(d) motion for several reasons. First, the court concluded that Mr. Freeman was not eligible to bring the motion because he was not a nonmovant. It had ordered him to show cause why it should not grant summary judgment in the Defendants' favor in its order denying Mr. Freeman's summary judgment motion. Mr. Freeman filed his Rule 56(d) motion in response to this order to show cause. The court treated the Rule 56(d) motion as connected to Mr. Freeman's motion for summary judgment, and thus as filed by the movant.

Second, the court determined that the discovery Mr. Freeman desired was irrelevant to his claims. It stated, "Mr. Freeman seeks to discover evidence outside the context of the hearing, but there is no showing that such discovery would impact Mr. Freeman's rights to due process during the hearing." ROA at 687. The court explained that "due process provides protections as to procedure rather than outcome" and that Mr. Freeman sought discovery that went to the board's decision rather than the procedures followed in the hearing. *Id*. at 687 n.15.

Third, the court concluded that Mr. Freeman's request to discover evidence of bias was based on pure speculation and was "not a legitimate basis to reopen discovery." *Id*.

Fourth, the court stated that Mr. Freeman sought evidence to "challenge the validity of the CDOC's restitution regime as a whole" and concluded that such discovery was "not pertinent to the claim asserted against these Defendants." *Id*.

Finally, in a footnote, the district court explained that counsel commenced

27

representation of Mr. Freeman after discovery closed and, rather than moving to reopen discovery, filed a motion for summary judgment, "apparently assuming that his evidence was sufficient . . . to prevail on the claim as a matter of law." *Id.* at 685 n.12. Then, after the court denied Mr. Freeman's motion for summary judgment and ordered him to show cause why summary judgment should not be entered against him, Mr. Freeman sought to reopen discovery. The court stated that, given this history, it was "not inclined to view Mr. Freeman's prior *pro se* status as a significant factor in reviewing the request." *Id*.

On appeal, Mr. Freeman's three arguments fail to persuade us that the district court abused its discretion.

First, he asserts that the district court erred in not treating liberally his initial *pro se* status. This argument fails because it does not address the basis of the court's holding: the district court denied the motion because the desired discovery was irrelevant to the issue of alleged due process violations at the disciplinary hearing.

Second, he argues that the district court erred in restricting procedural due process review to the process rather than the outcome of the hearing because a court has a duty to review the sufficiency of the evidence. But the district court did review the evidence and found it sufficient, and so have we.

Third, Mr. Freeman argues that the district court erred in concluding that he did not need further discovery. He states that the district court in its order to show cause applied a heightened legal standard to the denial of witnesses. He therefore needed to produce information that he had not anticipated before filing his motion for summary

28

judgment.  Mr. Freeman fails to argue this issue adequately for us to address it.  He has therefore waived this argument.  *See Hardman*, 297 F.3d at 1131 ("Arguments raised in a perfunctory manner . . . are waived.").

In sum, the district court did not abuse its discretion in denying the Rule 56(d) motion.

### III.    CONCLUSION

For the foregoing reasons, we affirm the district court's orders granting summary judgment and denying Mr. Freeman's Rule 56(d) motion to reopen discovery.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge