**Alejandro LUNA, Plaintiff–Appellee–Cross–Appellant,**

v.

**Jose PICO and Allen Cave, Defendants–Appellants–Cross–Appellees.**

**Docket No. 02–299.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 22, 2003.

Decided: Jan. 30, 2004.

Naomi J. Schrag, New York, New York (John D. Winter, Patterson, Belknap, Webb & Tyler, New York, New York, of

counsel), for Plaintiff–Appellee–Cross–Appellant.

Michael J. Keane, Assistant Attorney General, New York, New York (Eliot Spitzer, Attorney General of the State of New York, Deon J. Nossel, Assistant Solicitor General, New York, New York, of counsel), for Defendants–Appellants–Cross–Appellees.

Before: MESKILL and B.D. PARKER, Circuit Judges, and CHIN, District Judge.[*]

CHIN, District J.

In this case, a state prisoner contends that two hearing officers violated his civil rights in administrative disciplinary proceedings by finding him guilty of stabbing another inmate without at least "some evidence" of guilt and sentencing him to confinement in a special housing unit. He alleges that he was deprived of due process of law as a consequence and commenced this action below for damages pursuant to 42 U.S.C. § 1983.

Although we agree that the hearing officers' decisions were not supported by "some evidence," we conclude that the claims against them are barred by the doctrine of qualified immunity. Because the law was not "clearly established" and it was reasonable for the hearing officers to believe they were acting in a lawful manner, they are immune from suit. Accordingly, we reverse the district court's order to the extent it denies their motion for summary judgment and we remand for the entry of judgment dismissing the amended complaint.

[*] Denny Chin, United States District Judge for the Southern District of New York, sitting by designation.

## STATEMENT OF THE CASE

### A. The Facts

Except as stated otherwise, the facts relevant to these appeals are not substantially in dispute. Construed in the light most favorable to plaintiff-appellee-cross-appellant Alejandro Luna, the facts are as follows:

#### 1. The Parties

Luna is an inmate in the New York State correctional system. From prior to November 30, 1997 until April 21, 1998, he was incarcerated at the Fishkill Correctional Facility ("Fishkill"). On April 21, 1998, he was transferred to the Southport Correctional Facility ("Southport"). Defendants-appellants-cross-appellees Jose Pico and Allen Cave are hearing officers employed by the New York State Department of Correctional Services ("DOCS") who presided over separate disciplinary hearings on the charge that Luna stabbed another inmate.

#### 2. The Incident

On November 30, 1997, two inmates, Brown and Gonzalez, were involved in a fight at Fishkill. A third inmate, Lopez, tried to separate them and was stabbed in the process. Corrections Officer Patricia McIntosh witnessed the altercation but did not see Lopez get stabbed.

McIntosh sounded an alarm. Some 15 to 20 corrections officers responded to the location within seconds. The officers yelled "on the count"—a command for all inmates to freeze wherever they were.

Luna contends that at the time of the incident he was in his cubicle, on his bed, drinking coffee. After the incident, however, he was told by a corrections officer that he was a suspect in the stabbing of Lopez. Shortly thereafter Luna was placed in the special housing unit (the "SHU") pending investigation.

The next day, December 1, 1997, Luna was given a "ticket"—a misbehavior report. The ticket charged Luna with assault and reported the following:

> INMATE LOPEZ 90T1438 STATED THAT INMATE LUNA, A 91A1561 STABBED HIM SEVERAL TIMES. INMATE LOPEZ RECEIVED PUNCTURE WOUNDS ON HIS BUTTOCKS, SHOULDER AND ARM. PHOTOS OF SAID INJURIES WERE TAKEN. THE WEAPON IS UNKNOWN AND UNRECOVERED AT THIS TIME.

The report was signed by Lieutenant J. Tucker.

#### 3. The First Hearing

A Tier III disciplinary hearing was held on the charge on December 8, 1997, presided over by Pico.[1] Luna denied that he had anything to do with the incident. McIntosh testified as to what she saw. According to Luna, she also testified that she did not see Luna "around" the area where the incident occurred and that she saw him in his cubicle "immediately after the incident." Lopez was called as a witness, but he refused to testify. When asked if he had told anyone that Luna had stabbed him, he said: "I take the Fifth."

No other witnesses were called. Fisher, who wrote the misbehavior report, did not testify. The only evidence implicating Luna in the stabbing were the misbehavior report and a letter written by Lopez that was read into the record. It stated as follows:

---

**1.** No transcript of the December 8, 1997 hearing has been produced. The description of the evidence in the record is based on Luna's recollections and papers he submitted to DOCS in support of his administrative appeal.

My name is Hector Lopez, 90–T–1438, and the reason why I am writing to you, is because I would like to press charges on inmate Luna, 91–A–1561, for stabbing me on my arm and ass. This happened on one center about 2 PM. All I did was try to stop inmate Gonzalez from doing something to inmate Brown, that's when inmate Luna, 91–A–1561, tried to stop me from getting close to Gonzalez, that's when he, inmate Luna, stabbed me on my ass and arm.

Pico found Luna guilty of stabbing Lopez and sentenced him to 730 days confinement in the SHU and loss of certain privileges, and also recommended the loss of 24 months good time credit.

Luna appealed to the DOCS Special Housing and Inmate Discipline Unit. On March 3, 1998, DOCS reversed on the grounds that:

THE EVIDENCE PRESENTED FAILS TO SUPPORT CHARGES. ALSO THE HEARING OFFICER FAILED TO INTERVIEW THE AUTHOR OF THE REPORT. THE REPORT WAS NOT BASED ON STAFF OBSERVATION.

DOCS ordered a rehearing.

### 4. *The Second Hearing*

A second Tier III hearing was conducted starting on March 9, 1998, with Cave presiding.[2] Again, Luna pled not guilty and testified that he was in his cubicle at the time of the incident and had nothing to do with the fight. Lopez again refused to testify. He signed a "refusal form" stating that "I do not want to be involved because I don't want no problems." The misbehavior report was read into the record. McIntosh testified again. She stated that she witnessed the altercation between Brown and Gonzalez and saw a chair being

thrown twice. She saw Lopez try to separate the two, but she did not see him get stabbed. She did not know Luna's whereabouts at the time of the incident and she did not see him in his cubicle until after the incident was over.

Cave also read from a report that had been prepared by Sergeant Fisher, who had investigated the incident:

I [Fisher] then interviewed inmate Lopez who told me that . . . inmate Gonzalez was cutting inmate Brown and that he (Lopez) tried to break up the fight. When this happened according to inmate Lopez, inmate Luna who was the lookout started to stab inmate Lopez. Lopez had several puncture wounds to his buttocks, shoulder, and arm. Photos were taken of the injuries and turned over to Lt. Tucker. . . .

Luna read the letter from Lopez again, suggesting that it was inconsistent with the statement Lopez had given to Fisher.

Tucker, the author of the misbehavior report, testified. He stated that he wrote the misbehavior report charging Luna with stabbing Lopez based on Fisher's investigative report and Lopez's written statement, which Fisher had obtained from Lopez at Tucker's direction. Tucker did not speak to Lopez himself and testified that he had "no idea" whether Lopez was telling the truth.

Cave found Luna guilty of stabbing Lopez. He sentenced Luna to SHU confinement and loss of privileges for a total of 545 days, consisting of 95 days for the period from November 30, 1997 through March 3, 1998, when the first guilty finding was reversed, and an additional 450 days starting on March 3, 1998. Cave also recommended the loss of 18 months good time credit.

**2.** A transcript was prepared of the second hearing and is part of the record.

Luna again appealed and DOCS again reversed. In a memorandum dated June 8, 1998, DOCS concluded as follows:

SINCE REPORT WAS NOT BASED UPON FIRST–HAND OBSERVATION AND REPORTING EMPLOYEE OBTAINED INFORMATION THIRD–HAND, FURTHER TESTIMONY FROM STAFF WHO CONDUCTED INVESTIGATION WAS WARRANTED[.]

Luna was released from the Southport SHU to the general population on June 20, 1998. He spent a total of 204 days in SHU confinement as a result of the charge that he had stabbed Lopez.

## B. *The Proceedings Below*

Luna commenced this action pro se on November 3, 1998 against Pico, Cave, and two other defendants pursuant to 42 U.S.C. § 1983 seeking money damages for alleged violations of his constitutional rights. He was appointed counsel and filed an amended complaint. After the completion of discovery, both sides moved for summary judgment.

The district court heard argument on September 6, 2002. With Luna's consent, the district court dismissed the claims against the two defendants other than Pico and Cave. After initially indicating that it was going to reserve decision as to the balance of the motions, the district court spoke with counsel off the record. Upon reconvening on the record, the court noted that all claims in the case were dismissed on consent except the due process claims against Pico and Cave based on their determinations that Luna was guilty of the stabbing. The court denied the cross-motions to that extent, noting that the principal issue for trial was whether the officers were entitled to qualified immunity. The court set the case down for trial on October 7, 2002. An order memorializing the rulings was filed on September 6, 2002.

These cross-appeals followed. Pico and Cave contend that the district court erred in not granting summary judgment in their favor because they are protected by the doctrine of qualified immunity. Luna contends that he was entitled to summary judgment in his favor on the issue of liability.

## DISCUSSION

### A. Appellate Jurisdiction *and Standard of Review*

■ This Court has jurisdiction to hear defendants' appeal because "a district court's denial of a claim of qualified immunity, to the extent it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). This is so even where the denial is in the context of a motion to dismiss or for summary judgment. *Id.* at 527, 105 S.Ct. 2806; *see also Behrens v. Pelletier,* 516 U.S. 299, 307, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). Here, as the parties agreed at oral argument, no genuine issues of fact exist and the qualified immunity defense turns on issues of law.

■ This Court reviews *de novo* a district court's decision "denying a government official's motion for summary judgment on the basis of qualified immunity." *Cerrone v. Brown,* 246 F.3d 194, 198 (2d Cir.2001).

■ Luna asks this Court to exercise pendent appellate jurisdiction over his cross-appeal on the ground that the cross-appeal raises the same issue presented by defendants' appeal, *i.e.,* whether defendants violated Luna's due process rights by finding him guilty without "some evi-

dence" of guilt. We agree that pendent appellate jurisdiction should be exercised. "In the course of reviewing an immediately appealable interlocutory ruling, we may review a related ruling that is unappealable in its own right if, and only if, 'the otherwise unappealable issue is inextricably intertwined with the appealable one, or ... review of the otherwise unappealable issue is necessary to ensure meaningful review of the appealable one.'" *Davidson v. Chestnut,* 193 F.3d 144, 151 (2d Cir. 1999) (*quoting Merritt v. Shuttle, Inc.,* 187 F.3d 263, 268–69 (2d Cir.1999)). Although the cross-appeal raises the broader issue of defendants' liability, the issue of the existence of "some evidence" is "inextricably intertwined" in both the cross-appeal and the appeal. Hence, we consider Luna's cross-appeal together with defendants' appeal.

## B. *The Merits*

Two issues are presented: (1) whether defendants' decisions violated Luna's due process rights, *see Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (requiring courts confronted with qualified immunity defenses first to determine whether a constitutional right has been violated before determining whether that right has been clearly established); *Ehrlich v. Town of Glastonbury,* 348 F.3d 48, 57 (2d Cir.2003) (identifying exceptions to the *Saucier* two-step analysis when articulation of a constitutional right would be "impractical or impossible"); and

(2) if not, whether defendants are protected by the doctrine of qualified immunity.

### 1. *Due Process and Prison Disciplinary Proceedings*

 "[I]t has long been clear that inmates retain due process rights in prison disciplinary hearings." *Hanrahan v. Doling,* 331 F.3d 93, 97 (2d Cir.2003). Certain due process protections therefore apply where disciplinary proceedings may lead to the loss of good time credit, *see Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Superintendent v. Hill,* 472 U.S. 445, 453–54, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), or would subject an inmate to solitary confinement in the SHU. *See Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999); *McCann v. Coughlin,* 698 F.2d 112, 121–22 (2d Cir. 1983).[3] Inmates are entitled to advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken. *See Kalwasinski,* 201 F.3d at 108.

In *Hill,* the Court considered the issue of the quantum of evidence required to support a prison's decision to discipline an inmate by revoking good time credit. The Court held:

[R]evocation of good time does not comport with "the minimum requirements of procedural due process" unless the findings of the prison disciplinary board are

---

**3.** A prisoner's liberty interest is implicated when an institution's disciplinary decision results in an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Here, Luna spent 204 days in SHU confinement, and defendants have not argued that Luna did not suffer an "atypical and significant hardship." *See generally Ortiz v.*

*McBride,* 323 F.3d 191, 195 n. 1 (2d Cir. 2003); *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000) ("Confinement in normal SHU conditions for 305 days is in our judgment a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin.*"). We assume, without deciding the issue, that Luna did suffer an "atypical and significant hardship."

supported by *some evidence* in the record.

472 U.S. at 454, 105 S.Ct. 2768 (emphasis added; citation omitted). The Court held that the requirement of "some evidence"— also described as a "modicum of evidence"—would help to prevent "arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." *Id.* at 455, 105 S.Ct. 2768.

The Court in *Hill* did not provide much guidance as to the quantum of evidence necessary to constitute "some evidence." The Court wrote:

> We hold that the requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced ....' Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board.... We decline to adopt a more stringent evidentiary standard as a constitutional requirement.

472 U.S. at 455–56, 105 S.Ct. 2768 (emphasis added; citations omitted).

Although the Court in *Hill* stated that the question is whether there is "any evidence" that "could" support the disciplinary decision, this Court has not construed the phrase "any evidence" literally. Rather, we have looked to see whether there was "reliable evidence" of the inmate's guilt. *See Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir.2001) ("reliable evidence"); *Zavaro v. Coughlin*, 970 F.2d 1148, 1152

(2d Cir.1992) (qualified immunity doctrine does not protect hearing officer "where there was no reliable evidence whatsoever of the inmate's guilt").

Some examples are instructive. In *Zavaro*, an inmate was charged with participating in a riot in a mess hall filled with some one hundred inmates. 970 F.2d at 1149. The inmate was found guilty based on statements by corrections officers that "every inmate" in the mess hall participated in the riot. *See id.* at 1152. The *Zavaro* Court held that these statements were "so blatantly implausible when taken literally that they [did] not constitute even 'some evidence' of a particular inmate's guilt." *Zavaro*, 970 F.2d at 1152. In *Taylor*, a hearing officer found an inmate guilty based on information provided by a confidential informant (who did not testify) without engaging in "some examination of indicia relevant to [the] informant's credibility." We held that the "some evidence" standard was not met. *Taylor*, 238 F.3d at 194.

On the other hand, this Court has held that the "some evidence" standard was met where a confidential informant (who did not testify) provided incriminating information *and* there was evidence presented to the hearing officer that the information was reliable: the corrections official who spoke to the informant testified about the conversation and described factors relevant to assessing the informant's credibility, including the informant's reasons for coming forward, and a second corrections officer testified that this informant had given him reliable information in the past. *Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir.2001). Likewise, the Supreme Court in *Hill* held that the evidence was sufficient to meet the requirements of due process. There, a prison guard testified that he heard a commotion; upon investigating, he discovered an inmate who ap-

parently had just been assaulted. He then saw three other inmates "fleeing together," and saw no other inmates in the area. Although the Court noted that this evidence "might be characterized as meager," it held that the information constituted "some evidence" and was sufficient to support the finding of guilt. *Hill,* 472 U.S. at 456–57, 105 S.Ct. 2768.

We conclude that defendants' decisions were not supported by "some evidence" of Luna's guilt.

The only "evidence" offered at the first hearing was the misbehavior report, the letter from Luna, and the testimony of McIntosh. The misbehavior report merely recounted Lopez's accusation that he had been stabbed by Luna. Lopez's letter added little to what was in the misbehavior report. Lopez refused to testify. McIntosh did not see Lopez get stabbed and saw Luna in his cell after the incident. Tucker, who prepared the misbehavior report, was not called as a witness. As DOCS itself recognized on appeal, this evidence did not support the charges, the hearing officer did not interview the author of the misbehavior report, and the misbehavior report was not based on "staff observation."

The "evidence" presented at the second hearing was not significantly different. The only additional evidence was an excerpt from a report written by Fisher and the testimony of Tucker. They added little. The excerpt from Fisher's report merely restated what was in Lopez's letter. Although Tucker signed the misbehavior report, he prepared it based on information provided by Fisher, he never spoke with Lopez himself, and he had "no idea" whether Lopez was telling the truth. Fisher was not called as a witness, nor was there any indication that the hearing officer had sought to interview Fisher.

The "evidence" presented did not constitute "some evidence" of Luna's guilt as required by the due process clause. In the end, the "evidence" consisted solely of a bare accusation by a victim who then refused to confirm his initial allegations. Although Lopez clearly had been stabbed, no apparent effort was made to verify the charge that Luna was the one who stabbed him, nor was any apparent effort even made to evaluate Lopez's credibility. In their decisions, neither Pico nor Cave made any effort to assess Lopez's credibility. Nor does the record show that they were presented with any evidence that Turner or Fisher or any other corrections official made any effort to evaluate the truthfulness of Lopez's allegations against Luna.

We do not suggest that a victim must testify in a prison disciplinary proceeding before an accused inmate can be found guilty of assault. To the contrary, "[p]rison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." *Hill,* 472 U.S. at 456, 105 S.Ct. 2768. Certainly the reluctance of a victim to testify against his alleged assailant cannot be allowed to interfere with an institution's effort to maintain order and security. On the other hand, prison officials would not be unduly burdened by the requirement that they engage in some examination of factors that may bear on a victim's credibility, just as they are required to independently assess information provided by a confidential informant. *See, e.g., Taylor,* 238 F.3d at 194; *Zavaro,* 970 F.2d at 1153 n. 1. Due process requires that there be some "independent credibility assessment" of a victim as well.

■ Here, there was no such independent credibility assessment. Based on a

bare accusation, and without the support of any credible evidence, Luna was sentenced at the first hearing to 730 days and at the second hearing to 545 days of SHU confinement and the loss of substantial good time credit was recommended as well. We conclude, as a matter of law, that a prisoner's due process rights are violated, as in the confidential informant context, when he is punished solely on the basis of a victim's hearsay accusation without any indication in the record as to why the victim should be credited.

### 2. The Doctrine of Qualified Immunity

 The doctrine of qualified immunity protects state officials from civil liability for actions performed in the course of their duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal citation and quotation marks omitted). The doctrine protects officials who "act in ways they reasonably believe to be lawful." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Hence, a defendant is not liable if he did not violate clearly established law *or* it was objectively reasonable for him to believe that he was not violating clearly established law. *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir.2003); *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir.2001).

 As this Court has held, "[a] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.'" *Anderson v. Recore*, 317 F.3d

at 197 (*quoting Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir.1998)). The question is "what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 278 (2d Cir.1999); *see Anderson v. Creighton*, 483 U.S. at 640, 107 S.Ct. 3034 ("[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). Hence, even assuming a state official violates a plaintiff's constitutional rights, the official is protected nonetheless if he objectively and reasonably believed that he was acting lawfully. *See Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'") (*quoting Malley v. Briggs*, 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

We hold that defendants are protected by the doctrine of qualified immunity, for at the time of their decisions, a reasonable hearing officer would not have known that the quantum of evidence relied on by Pico and Cave was clearly an insufficient basis for finding Luna guilty. In the circumstances of this case, it was not objectively unreasonable for Pico and Cave to believe that the misbehavior report and letter from Lopez together with the fact that Lopez actually had been stabbed constituted "some evidence" of Luna's guilt.

First, as discussed above, the "some evidence" standard is less than precise. In *Hill*, the Supreme Court wrote that "the relevant question is whether there is *any*

*evidence* in the record that *could* support" a finding of guilt. 472 U.S. at 455–56, 105 S.Ct. 2768 (emphasis added). The Court in *Hill* further held that even "meager" evidence was sufficient. *Id.* at 457, 105 S.Ct. 2768. Notwithstanding the broad language of *Hill*, this Court has suggested that "reliable evidence," and not just "any evidence," is required. *See Taylor*, 238 F.3d at 194; *Zavaro*, 970 F.2d at 1153 n. 1. The decisions have not set forth clearly-defined standards, and instead the cases have proceeded on a case-by-case basis.

Second, we are unaware of other Second Circuit or Supreme Court decisions involving disciplinary findings based solely on accusations made by a victim. No Second Circuit or Supreme Court case has held that an accusation of a victim must be independently assessed before it can constitute "some evidence" of guilt. The confidential informant cases provide some guidance, but they are not controlling, for the considerations are different. A victim arguably has more incentive than a confidential informant to be truthful, for the victim has an incentive to see that the person who actually assaulted him is brought to justice.

Third, there is state law that at least arguably supports defendants' position. In *Foster v. Coughlin*, 76 N.Y.2d 964, 563 N.Y.S.2d 728, 565 N.E.2d 477 (1990), the Court of Appeals held that a determination that an inmate had assaulted a victim was supported by "substantial evidence," as required by state law. The victim initially implicated the accused, but later recanted. *Id.* at 965–66, 563 N.Y.S.2d 728, 565 N.E.2d 477. The accused inmate was found guilty based principally on the misbehavior report, which contained "a highly detailed account of the incident," given by the victim to the corrections officer who wrote the misbehavior report. *Id.* at 966, 563 N.Y.S.2d 728, 565 N.E.2d 477. Al-

though the corrections officer did not witness the assault and apparently did not testify at the hearing, the court held that the misbehavior report constituted "substantial evidence" that the accused was guilty. *Id.* The court noted that victim had testified, and that the hearing officer found the victim's recantation to be "incredible." *Id.* Although its facts are not precisely on point and it turned on state rather than federal law, the *Foster* case does provide defendants with some arguable support.

Taking these factors together, we hold that a reasonable hearing officer in defendants' position would not have clearly understood from the existing law that he was acting unlawfully. It was not clearly established at the time that the "evidence" presented to Pico and Cave of Luna's guilt was insufficient to meet the requirements of due process.

We are quick to emphasize, however, that our constitutional holding—that a prisoner's due process rights are violated when he is punished solely on the basis of a victim's hearsay accusation without any indication in the record as to why the victim should be credited—is "clearly established" for the purpose of future qualified immunity cases involving similar fact patterns.

## CONCLUSION

The district court's order denying the cross-motions for summary judgment is reversed to the extent it denied defendant's motion for summary judgment on qualified immunity grounds. The cross-appeal is rejected in light of the discussion above. The case is remanded for entry of judgment dismissing the amended complaint.