OPINION OF THE COURT
David I. Schmidt, J.
Defendants Richard R. Granger (Granger), John Cala (Cala), and David Napoli (Napoli) move for summary judgment in their favor to dismiss the complaint as asserted against them.
Plaintiff commenced this action to recover damages for violations of his rights under the First, Eighth and Fourteenth Amendments of the United States Constitution, pursuant to 42 USC § 1983. In the complaint, plaintiff, a former inmate, alleges that he sustained numerous injuries when he was assaulted by *332 a group of correctional officers while he was a prisoner at South-port Correctional Facility (Southport).
For the following reasons, the motion is granted in part and denied in part.
I. Relevant Background
A. Plaintiffs Testimony
At his deposition, plaintiff testified that, on November 24, 2008, shortly following a verbal confrontation with defendant Peter A. Mastrantonio (Mastrantonio), a correction officer assigned to Southport, he was shackled and then brutally beaten by Mastrantonio and several other correction officers, including Granger. Plaintiffs eyes were swollen shut soon after the attack began, preventing him from actually seeing some of his attackers. However, plaintiff believed that Granger was among them. Plaintiff testified that he recognized Granger’s voice when one of his attackers whispered into his ear certain words that were uniquely related to a confrontation plaintiff had with Granger about a week prior.
Plaintiff further testified that those he accused of being involved in the assault were part of a group of officers with a widely known reputation as a “beat up crew” at Southport that always left inmates with “some type of physical impairment.” (Tr at 143, 145.)
After the alleged assault was over, plaintiff was dragged from his cell and thrown forcefully into a shower. Shortly thereafter, Cala, the area sergeant, was notified of the incident and, rather than start an investigation, directed another correction officer, defendant M. Thomas (Thomas), to write up a misbehavior report against plaintiff for self-harm. Plaintiff claims that the misbehavior report was filed in retaliation after he protested and expressed his intention to seek legal redress. After a departmental hearing, the charge of self-harm was dismissed. During his deposition, plaintiff denied causing any of the injuries to himself.
Plaintiff also testified that he informed Napoli, Southport’s superintendent, about the incident shortly after it occurred, when Napoli passed plaintiff during a tour of the facility. Napoli told plaintiff that he would look into the accusations. After not hearing anything further, plaintiff wrote to Napoli. Napoli responded that he did not have enough evidence to show that plaintiff had been assaulted by correction officers.
*333 B. Correction Officer Granger’s Testimony
At his deposition, Granger averred that he was not working at Southport on November 24, 2008, the day plaintiff alleged the attack occurred. Granger testified that certain exhibits he was shown, specifically, copies of his calendar book and time card, confirmed that he was off that day as a result of a “swap” with another correction officer.
C. Sergeant Cala’s Testimony
Cala testified that he first saw the plaintiff soon after he had been placed in the shower. He questioned plaintiff regarding his injuries, but plaintiff simply shook his head and did not respond. He noted that plaintiff appeared upset, and to the extent that there were any visible injuries, they appeared minor. Cala then walked around the corner, out of view of plaintiff, to report the incident to the watch manager. A few minutes later, Thomas, who had been assigned to watch plaintiff, reported that plaintiff had started smashing his face on the floor. Cala directed Thomas to write up a misbehavior report, charging plaintiff with self-harm. Cala acknowledged that he did not witness the alleged self-harm. However, upon reentering the shower area, he observed that plaintiffs visible injuries seemed far more severe than they had before. He also testified that the plaintiff told him that his injuries were self-inflicted, and that he was willing to sign a statement to that effect. Cala did not obtain such a written statement from plaintiff because he felt it unnecessary as the alleged self-harm had been witnessed by Thomas.
D. Superintendent Napoli’s Testimony
During his deposition, Napoli testified that it was protocol for him to be notified of any incident involving the use of force against an inmate. However, he had no specific recollection of having ever been notified of the incident involving plaintiff. When shown the use-of-force report, he acknowledged that he had written “force necessary and appropriate” and signed the document. He testified that he made such determinations based upon the documentary evidence submitted along with this and similar reports, and that discussing the matter with the alleged victim was not a normal part of procedure. He had no recollection of ever meeting or conversing with plaintiff.
E. The Complaint
As against Granger, plaintiff alleges that he suffered numerous injuries when he was assaulted by Granger and others in violation of his Eighth Amendment right to be free from cruel *334 and unusual punishment. (Complaint ¶¶ 16-18, 33.) Plaintiff alleges that Cala violated his rights under the First, Eighth and Fourteenth Amendments by: (i) engineering the filing of a false misbehavior report alleging that plaintiff had caused harm to himself, and (ii) failing to properly monitor his subordinates. (Id. ¶¶ 20-23, 36.) As to Napoli, plaintiff alleges that he violated plaintiffs First, Eighth and Fourteenth Amendment rights by failing to take steps to remedy the unlawful conduct of his subordinates despite his knowledge that the accused officers had previously assaulted inmates, including plaintiff, thereby demonstrating deliberate indifference to plaintiffs safety and gross negligence in managing subordinates. (Id. ¶¶ 25-30, 42.)
Subsequently, plaintiff withdrew his First Amendment retaliation claim against Cala and Napoli, leaving only the Eighth and Fourteenth Amendment claims against these defendants.
II. Discussion
To prevail on a motion for summary judgment, the proponent must make a prima facie showing of entitlement to judgment as a matter of law, tendering evidentiary proof in admissible form. (See Zuckerman v City of New York, 49 NY2d 557, 560 [1980].) Once this showing has been made, the burden shifts to the party opposing the motion to rebut the prima facie showing by producing evidentiary proof in admissible form sufficient to require a trial of material issues of fact. (See Kaufman v Silver, 90 NY2d 204, 208 [1997].) Additionally, in deciding the motion, the court must view the evidence in a light most favorable to the party opposing the motion and must give that party the benefit of every favorable inference. (Negri v Stop & Shop, 65 NY2d 625, 626 [1985].)
A. The Eighth Amendment Claim
1. Granger
Based on the principle that personal involvement of a defendant is a prerequisite to liability under 42 USC § 1983 (Provost v City of Newburgh, 262 F3d 146, 154 [2d Cir 2001]; Mansour v Abrams, 185 AD2d 670, 670 [4th Dept 1992]), Granger seeks dismissal of the Eighth Amendment claim, arguing that documentary evidence, i.e., his time card and work calendar, proves that he was not present in the facility at the time of the incident.
In response, plaintiff submits proof, in the form of his deposition testimony, that Granger was one of his attackers. Specifically, plaintiff testified that, although he did not see Granger *335 during the incident, someone whispered in his ear words which made him immediately think that it was Granger because the communication related to a prior confrontation between them a week earlier involving the use of a particular racial slur that he had exchanged with Granger. (Tr at 74, 76-77.) Plaintiff further testified that he was familiar with Granger’s voice characteristics and that the voice sounded like Granger. (Id. at 78.) In light of this testimony, plaintiff claims that there is a question of fact as to whether or not Granger was present at Southport that day and a participant in the alleged assault.
In reply, defendants urge the court to discount plaintiff’s sworn testimony in favor of the documentary evidence submitted by Granger. However, the function of the court on the instant motion is issue finding and not issue determination. (See D.B.D. Nominee v 814 10th Ave. Corp., 109 AD2d 668, 669 [2d Dept 1985].) Consequently, defendants’ reliance on Munoz v Martinez (2005 WL 1355094, 2005 US Dist LEXIS 48255 [SD NY, June 8, 2005, No. 03 Civ. 0828LAK]), a case involving an unlawful force claim by a prison inmate against correction officers, is entirely misplaced. In Munoz, the court emphasized that it was granting judgment to the defendant because the plaintiff there, a prison inmate, had offered no evidence to dispute the defendant’s version of events, i.e., that he was not present during the alleged attack. (2005 WL 1355094 at *4, 2005 US Dist LEXIS 48255 at *9-11.) That is not this case.
In short, plaintiffs testimony that Granger was among his assailants raises an issue of fact sufficient to require a trial and to overcome Granger’s defense. Accordingly, summary judgment in Granger’s favor, as to this claim, is denied.
2. Cala and Napoli
As does Granger, Cala and Napoli argue that the personal involvement of a defendant is a required element for liability under 42 USC § 1983. Going further, defendants contend that, following Ashcroft v Iqbal (556 US 662 [2009]), direct involvement in the constitutional violation is required to impute supervisory liability; knowledge and acquiescence is insufficient. (See id. at 676-677.) Since plaintiff does not allege that they personally participated in the attack, Cala and Napoli contend that they cannot be held liable on the basis of their supervisory role, and the claim against them must be dismissed.
Plaintiff, relying on Colon v Coughlin, insists that he has submitted adequate proof of Gala’s and Napoli’s supervisory li *336 ability. (See 58 F3d 865, 873 [2d Cir 1995] [holding that failure to remedy, gross negligence or deliberate indifference are sufficient grounds to find supervisory liability].)[1] More specifically, plaintiff argues that Napoli (and Cala) was on constructive notice of the constitutional violations committed by the correction officers in question due to their notoriety as a “beat up crew,” and the raft of lawsuits spawned by their frequent use of unlawful force.[2] In addition, plaintiff claims that Napoli had actual notice of his subordinates’ predilection to violence as a result of his own face-to-face encounter with plaintiff (denied by Napoli) immediately after the incident. According to plaintiff, Napoli’s knowledge and refusal to take any steps to curb the activities of the accused correction officers is, under Second Circuit jurisprudence, a sufficient basis on which to find supervisory liability against Napoli. (Id.)
Nevertheless, defendants argue, on the authority of Bellamy v Mount Vernon Hosp. (2009 WL 1835939, 2009 US Dist LEXIS 54141 [SD NY, June 26, 2009, No. 07 Civ. 1801(SAS)]), that the “active conduct” standard announced in Iqbal abrogated those grounds enumerated in Colon under which a plaintiff may assert liability against a supervisor for mere acquiescence to a constitutional violation by his subordinates. As explained in Bellamy,
“[o]nly the first and part of the third Colon categories pass Iqbal’s muster — a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred. The other Colon categories impose the exact types of supervisory liability that Iqbal eliminated — situations where the supervi *337 sor knew of and acquiesced to a constitutional violation committed by a subordinate.” (2009 WL 1835939 at *6, 2009 US Dist LEXIS 54141 at *27-28.)
Because plaintiff does not assert that Cala and Napoli were direct and active participants in the violations of his rights, defendants contend that the Eighth Amendment claim against Cala and Napoli cannot be sustained, as a matter of law.[3]
However, as plaintiff argues, there are a number of federal district courts in New York that squarely reject the expansive view of Iqbal adopted by Bellamy. These cases hold that because the standard for First Amendment discrimination liability espoused by Iqbal is not the same as the deliberate indifference standard of Eighth Amendment claims, the Colon standards may still apply to such cases. (See e.g. Alli v City of New York, 2012 WL 4887745, *6, 2012 US Dist LEXIS 148879, *16-17 [SD NY, Oct. 12, 2012, No. 11 Civ. 7665 (BSJ) (MHD)] [“(W)here the claim does not require a showing of discriminatory intent, the personal-involvement analysis set forth in Colon should still apply”]; Inesti v Hicks, 2012 WL 2362626, *11, 2012 US Dist LEXIS 86642, *37-40 [SD NY, June 22, 2012, Peck, M.J., No. 11 Civ. 2596 (PAC) (AJP)], rep and recommendation adopted Intesti v Hogan 2012 WL 3822224, 2012 US Dist LEXIS 125272 [SD NY, Sept. 4, 2012, No. 11 Civ. 2596 (PAC) (AJP)]; Sash v United States, 674 F Supp 2d 531, 544 [SD NY 2009]; D’Olimpio v Crisafi, 718 F Supp 2d 340, 347 [SD NY 2010]; Qasem v Toro, 737 F Supp 2d 147, 151-152 [SD NY 2010].)
Further buttressing plaintiffs position, there is a line of post-Iqbal cases in which federal district courts in New York continue to employ the Colon criteria to assess Eighth Amendment claims against Department of Corrections and Community Supervision supervisors who are alleged to have acquiesced to their subordinates’ abuse of inmates.[4]
*338 Faced with this split in authority in the district courts, and pending resolution by the Second Circuit, this court finds the line of cases advanced by plaintiff to be better reasoned and more persuasive. First, as plaintiff observes, there is nothing in Iqbal to indicate that the Court intended to extend its rationale beyond claims premised on intent-based constitutional claims, specifically racial discrimination. To the contrary, the Court appeared to have limited the extent of its holding by stressing that “[w]here the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose.” (Iqbal, 556 US at 676 [citations omitted].)
In addition, to justify its determination that purposeful discrimination was required for supervisory liability, the Court emphasized the adverse impact of litigation on the decision making of high-ranking executive officials — the Attorney General of the United States and the Director of the Federal Bureau of Investigation, in the immediate aftermath of “a national and international security emergency unprecedented in the history of the American Republic.” (Iqbal at 685.) Here, however, Cala, an area sergeant, and Napoli, the prison superintendent, were directly responsible for the supervision of Southport and their subordinates and the safety of the inmates.
Consequently, this court concludes that Eighth Amendment claims for supervisory liability can be sustained with a showing of deliberate indifference and/or gross negligence, and does not require direct participation by the defendant. As such, there is a sufficient question of material fact raised by plaintiff regarding Gala’s and Napoli’s knowledge of and acquiescence to their subordinates’ unlawful behavior to make summary judgment on these claims inappropriate. Accordingly, defendants’ motion for summary judgment is denied as to the Eight Amendment claims against Cala and Napoli.[5]
*339 B. The Fourteenth Amendment Claim
On reply, defendants note that plaintiff has failed to address any of their arguments regarding this claim in his opposition papers and therefore it should be deemed abandoned and dismissed. However, “[a] summary judgment motion should not be granted merely because the party against whom judgment is sought failed to submit papers in opposition to the motion.” (Liberty Taxi Mgt., Inc. v Gincherman, 32 AD3d 276, 277 n [1st Dept 2006].) Moreover, “[a] movant’s failure to sufficiently demonstrate its right to summary judgment requires a denial of the motion regardless of the sufficiency, or lack thereof, of the opposing papers.” (Cugini v System Lbr. Co., 111 AD2d 114, 115 [1st Dept 1985], appeal dismissed 65 NY2d 1053 [1985].) In the case at bar, the court finds that plaintiff cannot maintain his due process claim in light of the evidence in the record and judgment must be granted to defendants on this claim.
At the outset, it must be noted that it is not entirely clear from the complaint as to which actions taken by defendants violated plaintiffs constitutional right to due process. Reading the complaint generously, the most likely explanation is that this claim relates to the allegedly false misbehavior report for self-harm.
However, various Second Circuit and New York federal district court cases have held that the issuance of a false misbehavior report by a correction officer against an inmate is not by itself a denial of due process. (See Faison v Janicki, 2007 WL 529310, *4, 2007 US Dist LEXIS 10340, *10-11 [WD NY, Feb. 14, 2007, No. 03-CV-6475L], citing Freeman v Rideout, 808 F2d 949, 952 [2d Cir 1986], cert denied 485 US 982 [1988]; Moore v Casselberry, 584 F Supp 2d 580, 582 [WD NY 2008] [“There is no basis for a constitutional claim alleging the mere filing of a false *340 report”]; Flemings v Kinney, 2004 WL 1672448, *3, 2004 US Dist LEXIS 14263, *10 [SD NY, Jul. 27, 2004, No. 02 Civ. 9989 (DC)] [“It is well settled that a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report” (internal quotation marks and citation omitted)].)
Furthermore, plaintiff has not alleged that the hearing he received in connection with the charge was procedurally deficient in any way. Under Wolff v McDonnell (418 US 539 [1974]), due process is satisfied if an inmate facing disciplinary charges receives (1) advance written notice of the charges against him; (2) a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; (3) a fair and impartial hearing officer; and (4) a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken. (Id. at 563-567; Luna v Pico, 356 F3d 481, 487 [2d Cir 2004].) Here, not only does plaintiff not complain of the manner in which the hearing was conducted, he relies on the fact that the charge of self-harm was dismissed after his hearing, to underscore its falsity. (Tr at 141-142; complaint ¶ 31.)
Because there is no evidence in the record to suggest that plaintiff was deprived of his due process, summary judgment is granted in favor of defendants as to plaintiff’s Fourteenth Amendment claim.
III. Conclusion
Defendants’ motion for summary judgment to dismiss the complaint as asserted against them is granted to the extent that the Fourteenth Amendment claim against Cala and Napoli is dismissed; and is otherwise denied.

. The Colon court enumerated five alternative grounds upon which a supervisor can be held liable for the constitutional violations of a subordinate: (1) direct participation by the defendant, (2) failure by the defendant to remedy a violation after being informed by a report or appeal, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue, (4) gross negligence by the defendant in managing the subordinates who committed the wrongful acts, or (5) deliberate indifference on the part of the defendant to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. (Colon, 58 F3d at 873.)

. Plaintiff has submitted evidence of the existence of 28 federal lawsuits brought in the Western District of New York on behalf of inmates at South-port, alleging similar civil rights violations to those in this case, against a number of the named defendants in this case including several in which Napoli is named a codefendant. (See plaintiffs affirmation in opposition at 3-4, n 2.)

. Defendants cite additional cases in the federal courts of the Southern District of New York that, like Bellamy, take the position that Iqbal nullified all the Colon factors for supervisory liability except those involving active conduct. (See Young v State of New York Off. of Mental Retardation & Dev. Disabilities, 649 F Supp 2d 282, 293-294 [SD NY 2009]; James v Bauet, 2009 WL 3817458,*3-4, 2009 US Dist LEXIS 106463, *8-12 [SD NY, Nov. 11, 2009, No. 09 Civ. 609 (PKC) (DFE)]; Joseph v Fischer, 2009 WL 3321011, *14, 2009 US Dist LEXIS 96952, *39-41 [SD NY, Oct. 8, 2009, No. 08 Civ. 2824 (PKC) (AJP)]; Sulehria v City of New York, 670 F Supp 2d 288, 325 [SD NY 2009].)

. See Diaz v Fischer, 2010 WL 1132772, 2010 US Dist LEXIS 27383 (ND *338 NY, Feb. 23, 2010, No. 08-CV-1208 [LEK/DRH]); Mateo v Fischer, 682 F Supp 2d 423 (SD NY 2010); Braxton v Nichols, 2010 WL 1010001, 2010 US Dist LEXIS 25652 (SD NY, Mar. 18, 2010, No. 08 Civ. 08568 [PGG]); Wilkins v Poole, 706 F Supp 2d 314 (WD NY 2010); Burton v Lynch, 664 F Supp 2d 349 (SD NY 2009); Shapard v Attea, 2009 WL 4042956, 2009 US Dist LEXIS 108137 (WD NY, Nov. 16, 2009, No. 08-CV-6146 CJS).

. Defendants contend that because plaintiff limited his argument in opposition to Napoli, the court should consider the claim, as against Cala, abandoned. (See e.g. Bonilla v Smithfield Assoc. LLC, 2009 WL 4457304, *4, *339 2009 US Dist LEXIS 116233, *11 [SD NY, Dec. 4, 2009, No. 09 Civ. 1549 (DC)]). However, in defendants’ cases, the courts dismissed claims because of a complete failure by the plaintiff to oppose an argument in support of dismissal. Here, although plaintiffs argument opposing summaiy judgment does not include Gala’s name, any such argument would be virtually identical to and be duplicative of his (successful) argument opposing summary judgment in favor of Napoli. Moreover, defendants’ invocation of Iqbal amounts to a single unified argument on behalf of both Cala and Napoli, as each of these defendants is charged with failing to properly monitor their subordinates. Indeed, in making their argument based on Iqbal, defendants refer to Cala and Napoli together. (See defendant’s affirmation in support ¶¶ 13-18.) Therefore, despite plaintiffs apparent oversight, this court reads plaintiffs argument regarding Napoli’s supervisory liability as pertaining equally to Cala.