Shabazz v. Bezio

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of February, two thousand thirteen.

**PRESENT:**
> **Rosemary S. Pooler,**
> **Peter W. Hall,**
> **Debra Ann Livingston,**
> > *Circuit Judges.*

_____

**Raheem Shabazz,**

> *Plaintiff-Appellant*,

> **v.**                                                               **12-674**

**G.R. Bezio, Correction LT., Clinton Annex Correctional Facility, E. Rice, Correction Sgt.; Clinton Annex Correctional Facility, P. Chase, Correction Lt.; Clinton Annex Correctional Facility,**

> *Defendants-Appellees*,

_____

**FOR PLAINTIFF-APPELLANT:**          Raheem Shabazz, pro se, Pine City, NY.

**FOR DEFENDANTS-APPELLEES:**     Denise A. Hartman, Assistant Solicitor General (Eric T. Schneiderman, Attorney General of the State of New York; Barbara D. Underwood, Solicitor General; Martin A. Hotvet, Assistant Solicitor General, *on the brief)* Albany, NY.

Appeal from a judgment entered February 8, 2012 in the United States District Court for the Northern District of New York (Mordue, *J.*) (Homer, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and the case is **REMANDED** for further proceedings.

Raheem Shabazz, proceeding pro se, appeals the district court's adoption of a magistrate judge's report recommending dismissal of his complaint, brought pursuant to 42 U.S.C. § 1983, alleging that his due process rights were violated by the defendants-appellees when Shabazz was subjected to two disciplinary hearings that resulted in guilty determinations and the imposition of a punishment that included confinement in "keeplock." We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review *de novo* a district court decision dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). To survive a Rule 12(b)(6) motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

2

the defendant is liable for the misconduct alleged." *Id*. While pro se complaints must contain sufficient factual allegations to meet the plausibility standard, *see Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009), the Court should read pro se complaints with "special solicitude" and interpreting them "to raise the strongest [claims] that they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam).

Finally, we have held that district courts should not dismiss a pro se complaint without granting the plaintiff at least one opportunity to amend. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (holding that district courts should not dismiss pro se complaints "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated").

After an independent review of the record and relevant case law, we conclude that the record does not contain sufficient information to confirm that the district court's determination that Shabazz's due process rights were not violated was without error. Specifically, with respect to Shabazz's first disciplinary hearing before Bezio, the following facts were alleged in Shabazz's complaint: (1) when Shabazz arrived at the Clinton Correctional Facility Annex, he was told that he could not have dreadlocks unless he was a Rastafarian; Shabazz complained to the Captain of Security; and Bezio was assigned to "investigate" his complaint; (2) Bezio informed Shabazz that "upon his investigation and being that [Shabazz] wasn't Rastafarian," "[Shabazz] could not wear dreadlocks" and Bezio "ordered" Shabazz "to cut [his] dreadlocks or be keeplocked," and "[s]ubsequently, Lt. Bezio order[ed] Sgt. Rice to keeplock [Shabazz] and to write a Misbehavior Report, which was written on April 14, 2008"; (3) Bezio was the hearing officer who considered whether Shabazz was guilty of the conduct described in Rice's misbehavior report; (4) Bezio

3

refused to recuse himself despite his investigation of Shabazz's complaint, ruled that Shabazz was guilty, and ordered that Shabazz be confined in "keeplock" for 30 days; (5) while Shabazz was in keeplock confinement, on April 29, 2008, Bezio wrote a misbehavior report because Shabazz was wearing a tsalot-kob, and a second disciplinary hearing was held, this one before hearing officer Chase; (6) Bezio was permitted to provide "rehearsed testimony" against Shabazz after the disciplinary hearing was adjourned for two-hours, stating that he had investigated whether Shabazz could wear dreadlocks and he had learned that only Rastifarians could wear dreadlocks or a tsalot-kob head piece; (7) Chase found Shabazz guilty and sentenced him to another 30 days in keeplock; (8) Shabazz appealed both of the guilty determinations, and both were affirmed; and (9) Shabazz appealed the affirmances to the Director of Disciplinary Appeals Unit in Albany, and "Norman Bezio," the alleged brother of Bezio, informed Shabazz "that there was nothing he could do about" the guilty determinations. Shabazz attached to his complaint two letters from the New York State Office of the Attorney General Division of Appeals and Opinions, which reversed and expunged the guilty determinations made at Shabazz's disciplinary hearings described above. Also attached to the complaint was a "Disciplinary Hearing Disposition Rendered" form, completed by Bezio and dated April 17, 2008, which stated that the only "evidence relied upon" consisted of a "written report" by "Sgt. Rice."

A prisoner alleging "a liberty interest arising under a state statute or regulation" and challenging the imposition of a confinement separate from his imprisonment must establish, in part, that this confinement "creates an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Arce v. Walker*, 139 F.3d 329, 334 (2d Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483-84 (1992)). To determine whether the prisoner suffered an

4

atypical and significant hardship, this Court considers "the extent to which the conditions . . . of the segregation differ from other routine prison conditions and the duration of the . . . segregation imposed." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (internal quotation marks omitted). In order to assert a due process argument, a prisoner must show that he has, *inter alia*, a protected liberty interest. *See Sandin*, 515 U.S. at 483-84. A protected liberty interest may be shown by a prisoner who establishes "that [he endured a] deprivation [that] was atypical and significant in relation to ordinary prison life." *Id.* at 384.

Accepting Shabazz's factual allegations as true -- as required under the Rule 12(b)(6) standard -- the district court adopted the magistrate judge's finding that, when Shabazz's two thirty-day sentences in keeplock confinement were aggregated, they were sufficient to raise a question of fact as to whether Shabazz's liberty interest was violated. The aggregated time Shabazz alleged that he spent in keeplock may have been sufficient to constitute an "atypical and significant hardship." *Sandin*, 515 U.S. at 484; *see also Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003) ("The length of disciplinary confinement is one of the guiding factors in applying *Sandin*'s 'atypical and significant hardship' test") . While this Court has explained that it looks at both the duration of disciplinary confinement as well as the conditions of that confinement in determining whether a due process violation has occurred, Shabazz's complaint does not contain detailed facts about the conditions of his keeplock confinement, and the district court did not analyze the conditions of his confinement. This Court has stated that, in the context of a Rule 12(b)(6) motion, a complaint "should not [be] dismiss[ed] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (citation omitted, alterations

5

in original). Since the district court was satisfied that Shabazz had sufficiently pleaded a liberty interest, the district court did not order Shabazz to file an amended complaint to detail the conditions he faced in keeplock confinement. Therefore, the lack of detailed information regarding the conditions of Shabazz's keeplock confinement is not fatal to his claim at this juncture, and this Court proceeds to the issue of whether Shabazz's due process rights were violated.

This Court has explained that "[o]ur conception of an impartial decisionmaker is one who, *inter alia*, does not prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990). Here, Shabazz's complaint alleged that Bezio researched the issue of whether Shabazz could wear dreadlocks, he concluded that Shabazz could not wear dreadlocks because he was not Rastafarian, and he instructed Rice to file a misbehavior report because Shabazz's dreadlocks violated prison regulations. Taking these facts as true, it cannot be said that Bezio had not "prejudge[d] the evidence" submitted to him as a hearing officer, or that he could not say "how he would assess evidence he has not yet seen"–since he had essentially already reviewed the evidence before he sat as a hearing officer. *Id.*

Although this Court has stated that "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges," *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996), this Court has also explained that there must be some "'reliable evidence' of the inmate's guilt.'" *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004) (quoting *Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir. 2001)). As a preliminary matter, although the adopted report and recommendation found that there was "ample evidence" to support Bezio's guilty determination,

6

the report and recommendation supported this finding by discussing prison regulations regarding the requirement that only registered Rastifarians were permitted to wear dreadlocks; however, a review of Bezio's "Disciplinary Hearing Disposition Rendered" form states only that he considered "Sgt. Rice's written report" and the information contained within that report. Although Bezio's "Disciplinary Hearing Disposition Rendered" form makes reference to Rice's order to Shabazz to "cut [his] dreadlocks to comply with departmental grooming standards," there is no indication that Bezio independently reviewed these "departmental grooming standards" to verify the reliability of the only evidence he relied upon–Rice's "written report." *See generally Luna*, 356 F.3d at 489 (discussing when evidence is "reliable" so as to satisfy the due process right of a prisoner within the context of a prison disciplinary hearing). Further, there is some ambiguity in the record as to whether Rice's "written report" was the same document as Rice's "inmate misbehavior report," or if there was some other writing upon which Bezio relied. Although the misbehavior report was attached to Shabazz's complaint, it does not appear that a "written report" by Rice was filed in the district court. Thus, this Court is not able to review the substance of the document Bezio relied upon in making his decision as a hearing officer, and is unable to confirm whether the only document consulted by Bezio contained "reliable" evidence for purposes of due process. *Id.*

With respect to Shabazz's challenges to the conduct of Chase and Rice, an independent review of the adopted report and recommendation reveals that no case law was provided in support of a finding that Chase's conduct did not violate Shabazz's constitutional rights, and there is no indication as to the basis for the dismissal of all claims against Rice. While the dismissal of these defendants may have been appropriate, a court should generally consider whether granting leave to

7

amend is appropriate before dismissing a complaint under Rule 12(b).  *See generally Shomo*, 579

F.3d at 183.  In addition, liberally construing Shabazz's complaint, it appears that he is raising a

claim that his constitutional rights were violated when he filed appeals from the affirmances of the

guilty determinations in his first and second hearings, and his appeals were reviewed and rejected

by Bezio's alleged brother, Norman Bezio.  Remand is appropriate because this claim was not

reviewed by the district court, and the district court should consider whether leave to amend

should be granted so that Shabazz may add Norman Bezio as a defendant and whether further

factual development of the record may be warranted in order to review this claim.  *See, e.g.,*

*Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 585 (2d Cir. 2006) (stating

that, when a claim "requires further development of the factual record, [it should be] remand[ed] to

the district court").

Accordingly, it is hereby ORDERED that the district court's judgment, entered on

February 8, 2012, is VACATED and the case is REMANDED to the district court for further

proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8